' YARRUT, Judge.
Plaintiffs (husband and wife) filed this suit seeking $10,000 in damages of which $3,000 is for past and $7,000 for future pain suffered by Mrs. Foret, and $231.00 medical expenses and doctors’ fees incurred by Mr. Foret on behalf of Mrs. Foret, resulting from bodily injuries allegedly sustained by Mrs. Foret on the premises of Defendant’s store, located at 737 Canal Street in New Orleans, on or about September 2,1964.
Plaintiffs allege the injury to Mrs. Foret was caused by the falling of a “record tree” breaking loose from a wire or brace that held it upright, and pled res ipsa loquitur against Defendant.
*418 Plaintiffs contend that while Mrs. Foret was in the rear of Defendant’s store by the cashier’s counter in the record department, the “record tree,” heavily laden with record albums, suddenly fell towards the floor and struck her across the back as she was standing two or three feet from the “tree” with her back turned towards it; that the force of the blow, coupled with the weight of the “tree,” knocked her to the floor; that she was promptly helped to her feet by one of Defendant’s employees and her niece, who had accompanied her to the store; that she duly reported the accident, and believes, and so alleges, that the fall of the “record tree” was due to the breaking or loosening of the wire or brace attached to it to hold it upright. In the alternative, should the above allegations prove incorrect, she pled “res ipsa loquitur.” She further alleged that as a direct result of this blow, she suffered a strain of the cervical region and low dorsal region of the spine; continuous pains in her back for about five months; that the pain gradually subsided and became more intermittent, but it never left her completely.
Defendant first denied any negligence on its part and, in the alternative, should it be held guilty of negligence, then pled Mrs. Foret was guilty of contributory negligence for: (1) failure to maintain a proper lookout and to see and appreciate what she should have; (2) failure to remain attentive to her surroundings; (3) failure to exercise due care and diligence in the premises; (4) failure to take any action whatsoever to avoid the accident; and (S) causing the “record tree” to fall.
Defendant then filed a separate third-party petition, making All South Distributing Corporation a third-party Defendant, alleging that the “record tree” was purchased from and installed by third-party Defendant, and if judgment is rendered against it and in favor of Plaintiff, that it have judgment over and against third-party Defendant whose negligence is alleged to be the selling and delivering of the “record tree” or platter pole and stand in question which was not reasonably safe to be used for the purpose sold; and failing to take reasonable safeguards to insure that the “record tree” or platter pole and stand was free of defects or vices in design or construction prior to delivery to third-party Plaintiff.
At the time of the trial the third-party Defendant had not yet been cited, and Defendant (as third-party Plaintiff) requested a continuance, which the District Judge refused. However, in his judgment, he reserved all the legal rights of third-party Plaintiff against third-party Defendant.
The District Judge gave judgment to the husband for the amount claimed, and to the wife for $3,500 and, in his Reasons for Judgment, stated he applied the doctrine of res ipsa loquitur against Defendant, viz. :
“The Court’s understanding of res ipsa loquitur is, literally, that the thing speaks for itself.
“The facts before me are that this lady was in the store with a customer, or in the company of a customer, and without any activity whatsoever on her part a record tree weighing — nobody ever told me what it weighed, but it approximately held at least 30 albums of records on it, and it suddenly falls on her. I don’t know what res ipsa loquitur is if that is not res ipsa loquitur, and in the Court’s opinion, in order to absolve one’s self from any negligence, the burden shifts to the defendant to show that there was no negligence on their part.
“Now, defendant has not shown that there was no negligence. In fact, a so-called record tree was there that was liable to fall. The fact that they put a wire on it — the manager of the store says that he put it there to keep it from moving —but that does not mean that because they put a wire on it that it was not negligence to put that in there in a display where it could fall — and actually it did fall on a customer — because even though a wire was put there to keep it from moving, it was certainly apparent — and it has not been explained that this dangerous in *419 strumentality, this brass tree rod with records, was in such a position as to fall and strike and injure a customer, or an invitee, or a guest in the place.
“So the Court has no difficulty in determining that the defendant was guilty of negligence and that, therefore, the plaintiff must recover.”
The correctness of the application of the res ipsa loquitur doctrine by the District Judge is best illustrated by the testimony of the Defendant’s “Floor Walker” who testified for Defendant, inter alia:
“Q. Could you tell us a little bit about the composition of the record tree and stand?
“A. Well, the stand the display stand for the record tree had a heavy metal base approximately I would say 12 inches in diameter and welded to this was just a straight pipe that came up from the base, straight up, and the record tree to display, it was merely set down inside the pipe.
“Q. Now Mr. Berthelot, it was you, was it not, who put this particular record tree together and in this particular stand and situated it where it was at the time of the accident?
“A. Yes.
“Q. How long before this accident had you done this ?
“A. I would say about four or five months.
“Q. After you had put it together and assembled it in place had you attached a wire to it and to a permanent display counter?
“A. Yes. This was not — the tree was not a display but I attached the tree to the display.
“Q. And by means of a wire?
“A. Yes, sir.
“Q. Tell me your purpose in doing that.
“A. Well, to keep the — we have the problem of people moving things and, I mean, if we set racks of this nature, people don’t knock them over but they move them from where they were supposed to be— we call it walking — and the purpose of the wire was to keep this rack from walking away, in other words; to keep it flush up against this permanent type of display.
“Q. Well, when you came down and investigated this accident you found that the wire had broken or had become undone?
“A. The wire was broken.
“Q. It popped ?
“A. I couldn’t say how it happened; I just knew it was broke but how it broke I couldn’t say.”
Regarding quantum, Dr. A. N. Houston, an expert in industrial trauma, testified Plaintiff’s injuries were very light. He saw her only once.
However, Dr. George C. Battalora, an expert in orthopedic surgery, found muscle spasm on his first examination in the lower dorsal area and slight spasm in the trapezium muscles, tenderness over the sixth, seventh and ninth dorsal spine, and tenderness at the sixth cervical level. He also found a ganglion over the dorsum of the right wrist, which he said was in his opinion not connected in any way with the accident; so no consideration can be given this injury. The doctor saw Plaintiff-wife on several occasions beginning October 30, 1964 until February 12, 1965, when he discharged her tentatively; and that she was without pain at that time. She returned to him on June 18, 1965 and he treated her again and she had a recurrent type of pain, and at that time he treated her from June 18 to October 5, 1965 — he didn’t say he discharged her, but he saw her on October 5, 1965 and again on July 8, 1966, and said *420 she had pain in the middle or dorsal region, and tenderness in the dorsal region. He saw her later in July, 1966 and she still had pain, which she claimed increased after she had used the traction he recommended. He saw her on July 29, 1966 and she said she had pain three days prior to that. He saw her on August 9, 1966 and finally on October 7, 1966. On both occasions she still had pain.
We can find no error in the factual conclusions of the District Judge, nor in the award of $3,500 to the wife and $231.00 to the husband.
The judgment is affirmed; Defendant to pay all taxable costs in both courts.
Judgment affirmed.